UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK B. HARRIS,

        Plaintiff,

    v.

JOSEPH LEHMAN,

        Defendant.

Case No.  C05-5379RBL

REPORT AND RECOMMENDATION

**NOTED FOR:**
**October 13th, 2006**

      This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court is defendant's motion for summary judgment.  (Dkt. # 27).  Plaintiff has not responded to the motion and instead sought to extend discovery and strike this motion.  (Dkt. # 25 and 28).  Plaintiff's motions have been denied.  (Dkt. # 30).  Further, plaintiff had been ordered earlier in the action to show cause why sanctions should not be imposed for the filing of repeated motions on the same subject.  (Dkt. # 24).  Plaintiff did not show cause and sanctions were imposed.  Plaintiff has appealed the order denying his extension of time and imposing sanctions.  The appeal to the District Court Judge is pending.  (Dkt. # 31).

      The time for responding to defendants summary judgment motion has passed and the motion is now ripe for review.  Under local Rule 7 failure to respond to a motion may be deemed by the court as an

REPORT AND RECOMMENDATION
Page - 1

admission that the motion has merit. Here, the court adopts defendants unopposed statement of facts:

Mark Harris, was previously in the custody of the Washington State DOC pursuant to a judgment and sentence entered in Skagit County Superior Court. On July 8, 1999, Plaintiff pled guilty to one count of Communication with a Minor for Immoral Purposes. Exhibit 1, Declaration of Virginia Shamberg, Attachment A, Judgment and Sentence in State v. Mark Harris, Skagit County Superior Court Cause No. 99-1-00037-3. The trial court imposed a period of 60 months confinement with thirty six months of community placement. Id.

Mr. Harris' ERD was October 26, 2002. Exhibit 2, Declaration of Cherrie Kollmer, Attachment A, Legal Face Sheet. Mr. Harris' sentence expired on June 21, 2004. Id. Mr. Harris was released from DOC custody on June 18, 2004. Id. Mr. Harris is currently a resident at the Special Commitment Center (SCC), a Department of Social and Health Services facility on McNeil Island. According to Mr. Harris' deposition testimony, his civil commitment trial was set for the end of May. Exhibit 3, Declaration of Amanda M. Migchelbrink, Attachment A, Deposition Transcript of Mark Harris, page 7:lines 4-8. The outcome of that trial is unknown.

Inmates who have a community custody requirement in their judgment and sentence and are required by law or their judgment and sentence to have a release plan approved by DOC, may be released to community custody on or after their earned early release date only if their release plan is approved by DOC and the statutory notification requirements for the release of such offenders are satisfied. Exhibit 4, Declaration of Mary Leftridge Byrd ¶ 2. Under DOC policy 350.200, an inmate's transition into the community on community custody status follows the approval of an inmate's proposed release plan, including a proposed release address which does not violate the conditions of the inmate's judgment and sentence, does not place the inmate at risk to re-offend, and does not present a risk to victim safety or community safety. Id. ¶ 4; See also Exhibit 4, Attachment A, DOC Policy 350.200.

DOC Policy 350.200 provides the process for an inmate to secure DOC approval of a release plan in order to be released to community custody. Id. ¶ 3. DOC Policy 350.200 is available to all inmates. Id. In determining whether an inmate's proposed plan to release to community custody is acceptable, DOC staff conduct a review of all relevant documentation including, but not limited to, the inmate's judgment and sentence, field files, classification documents, psychological/psychiatric and forensic psychologist reports, the inmate's assigned risk management classification, and the inmate's criminal history summary. Id. ¶ 5.

Proposed release plans for possible transfer to community custody status for sex offenders are investigated by a Classification Counselor or Community Corrections Officer (CCO) to determine if the plan is viable. Exhibit 5, Declaration of Kimberly Acker ¶ 7. Minimum requirements include: an actual location of a physical address, not a contact address or post office box; the occupant/owner of the property is knowingly allowing the sex offender to reside there; the sex offender intends to physically reside in the residence; and the placement does not put the offender in violation of his/her conditions of release. Id. The proposed sponsor shall be informed of the offender's criminal history, sex offender notification level, community notification, and conditions of release. Id. The Classification Counselor or CCO will investigate. Id.

The CCO will assess the degree of risk for victims and potential victims of similar age or circumstances when investigating the proposed release plans for sex offenders. Id. See also Exhibit 4, Attachment A, at 10-11. A release plan will be denied if the classification Counselor or CCO determines that the plan will place the offender in circumstances where there is a likely risk to reoffend. Exhibit 5 ¶ 7. See also Exhibit 4 ¶ 4.

     If a release plan is denied for an offender who appears to meet the definition of a sexually violent predator, as determined by the ESR SVP Subcommittee, the offender may submit a new or revised plan for DOC's review. Exhibit 5 ¶ 15. <u>See</u> also Exhibit 6, Declaration of Ruben Cedeño ¶ 9. If the sex offender is ultimately unable to locate a viable release address or all of the offender's proposed plans for possible transfer to community custody status are denied, he/she shall be released on the date his/her maximum sentence is reached. Exhibit 5 ¶ 15; Exhibit 6 ¶ 9. Counselors continue working with inmates up to their maximum release date encouraging inmates to find the best possible place for them to go, even though once inmates have reached their maximum release date, they must be released without regard to their plan. Exhibit 6 ¶ 9.

     According to Mr. Harris' sworn testimony, he submitted three release plans. Mr. Harris testified that he first submitted an address in September of 2002 to his mother's apartment in Bellingham. Dep. Transcript 11:4. According to DOC records, he submitted his first request to go to his mother's house in June of 2002. Exhibit 7, Declaration of Dana Lowman, Attachment A, page 7, Chrono note dated June 17, 2002. Mr. Harris admits that his plan was subsequently denied because his mother was living in a small one bedroom apartment that would not be big enough for both of them. Dep. Transcript 11:15-23. Mr. Harris admits that this plan to live at his mother's house was investigated and denied. <u>Id</u>. A CCO did investigate Mr. Harris' mother's apartment to determine if it was a viable address. Exhibit 7, Attachment A, pages 8-9, Chrono note dated August 14, 2002. When the officer visited he discovered that the apartment was small with only one bedroom. <u>Id</u>.

     According to Mr. Harris' testimony, he submitted two more release plans in September of 2002 to two separate halfway houses in the Bellingham, Washington area. Dep. Transcript 11:24-12:3. He states that neither one of those residences accept sex offenders and were not viable addresses. <u>Id</u>. Mr. Harris also claims that he provided other addresses to his CCO in the Bellingham area, however, he did not submit a formal address for DOC to investigate. Dep. Transcript 16:17-20.

(Dkt. # 27, pages 2 through 5(footnotes omitted)).

     Defendant Lehman moves for summary judgment and argues:

1.    Plaintiff had no entitlement to be released prior to expiration of his sentence.

2.    Plaintiff's action is barred by the favorable termination doctrine.

3.    Plaintiff has no liberty interest in being released early.

4.    Lack of personal participation.

5.    The claims are barred by the Eleventh Amendment.

6.    Qualified immunity.

(Dkt. # 27, page 2).

     Having reviewed the file and defendant's motion the court concludes this case is barred by the favorable termination doctrine. In the alternative plaintiff had no liberty interest in being released when he became eligible for transfer to community custody.  He only had the ability to submit a plan or discretionary

approval.

## DISCUSSION

A. <u>Procedural bar</u>.

In <u>Heck</u> the Supreme Court held that "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994)(emphasis added). The court added:

> Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. . . . [A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

<u>Heck v. Humphrey</u>, 512 U.S. at 489 (1994).

This court has been concerned with the application of the doctrine espoused in <u>Heck</u> to any case where the plaintiff was no longer in custody on that conviction. This concern was shared by the Supreme Court and the Ninth Circuit. <u>Spencer v Kemna</u>, 523 U. S. 1 (1998); <u>Nonnette v. Small</u>, 316 F.2d 872 (9th Cir. 2002). The concern is based on habeas corpus actions having an in custody or case in controversy requirement. 28 U.S.C. § § 2241 (c), 2254 (a), 2255. An expired or completely served conviction does not meet the requirement even if the conviction is later used to enhance a sentence. <u>Garlotte v. Fordice</u>, 515 U.S. 39 (1995).

On March 27th, 2006 the Ninth Circuit decided the case of <u>Guerrero v. Gates</u>, 442 F.3d (9th Cir. 2006). The court found that the fact that Guerrero "is no longer in custody and thus cannot overturn his prior convictions by means of habeas corpus does not lift *Heck's* bar."

In <u>Guerrero</u> the court found that <u>Heck</u> barred claims for wrongful arrest, malicious prosecution and conspiracy to bring false charges. Mr. Harris would be barred from bringing his claims for failure to release prior to his maximum release date in this § 1983 claim. This is because he is challenging the length of his sentence.

In <u>Gurrerro</u> the court noted several exceptions to the barr, thus, application of the doctrine must be on case by case bases. The exceptions are founded on the fear that an inmate may have something happen close to the end of his sentence and not be able to exhaust his state remedies and file a habeas corpus action on the

new issue prior to his release. The Ninth Circuit recognized this dilemma and stated:

> In following the reasoning of the concurrence in *Spencer*, we have emphasized the importance of timely pursuit of available remedies in two cases. In *Cunningham v. Gates*, we held the *Heck* barred the plaintiff's § 1983 claims despite the fact that habeas relief was unavailable. Habeas relief was "impossible as a matter of law" in Cunningham's case because he failed to timely pursue it. We declined to hold that Cunningham's failure to pursue habeas remedies [took] his § 1983 claim out of *Heck's* perview.
>
> Although we held in *Nonnette* that the plaintiff could bring § 1983 claims despite the Heck bar because habeas relief was unavailable, we did so because Nonnette, unlike Cunningham, timely pursued appropriate relief from prior convictions.

Gurrerro, 442 F.2d at 704, 705.

Applying the holding to Mr. Harris, Mr. Harris has a potential release to community custody on October 26th, 2002. He states he submitted three plans in quick succession in September of 2002. (Dkt. # 27, Exhibit 3, Attachment A Deposition of Mr. Harris). The Chronological entries from his counselor show the plans being denied on August 14th, 2002, and in January of 2003. Mr. Harris was not released until June 18th, 2004. Thus, Mr. Harris had nearly one and one half years to pursue relief. The record is devoid of any indication he attempted to do so. Indeed, Mr. Harris has not responded to this motion. The action is barred.

      B.      <u>Liberty interest</u>.

In the alternative, plaintiff claims that his constitutional rights were violated when he was unlawfully detained past his earned early release date. The United States Supreme Court has held that there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. <u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u>, 442 U.S. 1, 7 (1979). A state will only be held to "create" a constitutional liberty interest if its laws affirmatively create an interest that, if taken, would impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995). The Sentencing Reform Act (SRA) presumes that an offender committed to the DOC shall not be released before the expiration of the maximum sentence. RCW 9.94A.728. "The statute prohibits early release absent existence of one of the statutory exceptions." <u>State v. Rogers</u>, 112 Wn.2d 180, 183, 770 P.2d 180 (1989). The statute does not authorize early release based on earned early release credits for offenders convicted of crimes against persons, residential burglary, sex offenders, or for offenders with prior convictions for sex offenses. RCW 9.94A.728(1), (2).

Unlike other SRA offenders, offenders subject to community custody are excluded from the program

REPORT AND RECOMMENDATION
Page - 5

allowing early release based on earned early release credits.  A community custody offender does not actually receive earned early release credits, and has no right to early release based upon good conduct or performance in prison.  Id.; In re Crowder, 97 Wn. App. 597, 600, 985 P.2d 944 (1999).  The DOC has promulgated policies relating to community custody in compliance with the authority it was granted by the Legislature.  (Dkt. # 27, Exhibit 4, Attach. A).  If a release plan cannot be established, offenders will remain in total or partial confinement until an acceptable plan is established or the offender reaches his maximum expiration date.  (Id. at Exhibit. 4, Attach. A at 15).

Plaintiff bases the allegations of his Complaint primarily on the Dutcher decision of the Washington Court of Appeals.  In that decision, however, the Washington Court of Appeals has made it clear that the DOC retains the discretion to decide whether a sex offender should be transferred to community custody status:

> For sex offenders, early release is available only by way of a transfer to community custody status: 'a person convicted of a sex offense . . . may become eligible, in accordance with a program developed by the Department, for transfer to community custody status in lieu of earned early release time . . . .

In re Dutcher, 114 Wn. App. 755, 758, 60 P.3d 635 (2002).

While sex offenders are permitted to submit a community custody plan for DOC's investigation, the offender does not possess a legal entitlement to be released on that plan.  Id. at 757-66; RCW 9.94A.728; In re Crowder, 97 Wn. App. 597, 600, 985 P.2d 944 (1999).   Ultimate denial or approval of that plan remains within the DOC's discretion, even after the Dutcher decision. RCW 9.94A.728.

The record reflects that DOC officials promptly investigated plaintiff's release plan and denied it on its merits.  Plaintiff's release plan to live with his mother was denied as she lived in a one room apartment that was simply too small.  The other two plans were denied because the facilities in question would not accept sex offenders. (Dkt. # 27. Exhibit 7, Attachment A "Chrono" notes).  Defendants are entitled to dismissal of this action.

This action should be **DISMISSED**.  The dismissal should be **WITH PREJUDICE** because plaintiff cannot now proceed in habeas corpus as he is not in custody.  In the alternative he has no liberty interest at stake.  A proposed order and proposed judgment accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

1  parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ.
2  P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v.</u>
3  <u>Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to
4  set the matter for consideration on **October 13th, 2006**, as noted in the caption.

6        DATED this 14th day of September, 2006.

9                      <u>*/S/ J. Kelley Arnold*</u>
10                     J. Kelley Arnold
                    United States Magistrate Judge